UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDEN D. RALL,

        Plaintiff,

v.                                    Case No. 1:13-cv-1046

                                      Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).[1]

Plaintiff was born on May 12, 1987 (AR 152).[2] Plaintiff alleged a disability onset date of March 12, 2010 (AR 189). He completed high school and had previous employment as a fast food crew member, restaurant server, bartender, motel front desk clerk, cashier, factory clerk, caregiver and retail sales (AR 42-49, 195, 244, 247). Plaintiff identified his disabling conditions as club feet post-19 surgeries and arthritis (AR 194). On May 25, 2012, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 17-27). This

---

[1] The Court notes that while plaintiff brings this court action *pro se*, he was represented by an attorney at the administrative hearing (AR 33) and at the Appeals Council (AR 12).

[2] Citations to the administrative record will be referenced as (AR "page #").

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.[3]

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in

---

[3] Plaintiff's administrative hearing was held in Augusta, Georgia on February 17, 2012 (AR 17). In his *pro se* complaint filed in this Court on September 24, 2013, plaintiff stated that he was a resident of Ingham County, Michigan. *See* Compl. (docket no. 1). While this action was pending, plaintiff advised the Court that he was incarcerated at FCI Elkton in Ohio. *See* Letter (June 23, 2014) (docket no. 18). Plaintiff cannot receive monthly benefits while incarcerated. "Under the Social Security Act and pursuant to SSA regulations, disability insurance benefits may not be paid to an individual who is incarcerated for a criminal offense, or who is committed to an institution as a sexually dangerous person. *See* 42 U.S.C. § 402(x)(1)(A); 20 CFR § 404.468. The regulations indicate that nonpayment of benefits due to incarceration is considered an initial determination. *See* 20 C.F.R. § 404.902(t)." *Aruanno v. Commissioner of Social Security*, 471 Fed. Appx. 87, 88 (3d Cir. 2012). However, because plaintiff was incarcerated after the ALJ entered the decision denying benefits, his present incarceration is not relevant to this appeal, which is limited to whether the ALJ's decision was supported by substantial evidence.

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 12, 2010, and that he met the insured status requirements of the Social Security Act through September 30, 2011 (AR 13). At step two, the ALJ found that plaintiff suffered from severe impairments of bilateral foot deformity (clubfeet) status post 17 corrective surgeries, and osteoarthritis (AR 19). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint) (AR 20).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform sedentary work as defined in 20 CFR 404.1567 with some limits. In particular, he can lift up to 20 pounds occasionally and 10 pounds frequently. He

      can stand or walk for 2 hours of an 8-hour workday, never climb stairs or ramps, never operate foot controls, occasionally balance, and must avoid machinery and unprotected heights.

(AR 21).  The ALJ also found that plaintiff was unable to perform his past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 25-26).  Specifically, plaintiff could perform the following unskilled sedentary work in the State of Georgia: collection clerk (15,200 jobs); cost clerk (14,000 jobs); assembler (6,300 jobs); and surveillance system monitor (1,400 jobs) (AR 26).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 12, 2010 (the alleged onset date) through May 25, 2012 (the date of the decision) (AR 26-27).

### III. ANALYSIS

Plaintiff did not provide an initial brief in the form as directed by the Court.  *See* Notice (docket no. 9).  The Court construes plaintiff's brief as rasing two issues on appeal.[4]

    **A.    The ALJ erred by finding that plaintiff could perform sedentary work with his club feet.**

First, plaintiff contends that the ALJ erred by finding that he could perform sedentary work with club feet.  Plaintiff testified that he had 17 corrective surgeries for his club feet from birth through age 14 (AR 21).  In addition,

---

[4] In his reply brief, plaintiff raised new issues regarding (1) the side effect of medication (i.e., "working through the fog of medication") and (2) that his benefits were denied on a re-determination made after he reached the age of majority.  *See* Plaintiff's Reply (docket no. 26).  Plaintiff did not raise these issues in his original brief.  Moreover, he has done nothing more than state conclusions with respect to both issues. The Court deems these arguments waived.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

> He testified at the hearing that he is able to walk for 5-10 minutes before sitting down, sit for 6-7 hours, walk about 200-300 yards, and lift about 40-50 pounds. He stated that his back is his worst impairment and he has sharp pounding with every step. He also stated that he has a sharp pain on his right side and his hip goes all the way out. He stated that his pain level is a 10 on a scale of 1-10, on days he works and a 6-7 on other days. In terms of his activities of daily living the claimant testified that he was able to microwave dinners, take out the trash, drive an electrical cart for shopping, drive a car, play video games, and attend church once weekly.

(AR 21).

In addressing whether plaintiff met the requirements of Listings 1.02 and 1.03, the ALJ found that, despite having club feet, plaintiff could ambulate effectively and perform work-related activities:

> Listing 1.02 is not met because while the claimant does have club feet which is a gross anatomical deformity with signs of limitation of motion or other abnormal motion of the affected joint(s), involving one major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle) he does have the ability to ambulate effectively, as defined in 1.00B2b[.]" [sic]
>
> "(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. In the instant case, the claimant is capable of sustaining a reasonable walking pace over a sufficient distance to carry out daily activities. For example, the claimant testified at the hearing that he was able to take out the trash, walk almost a block, and work as a server in restaurants. (Hearing Testimony). Further, the claimant testified at the hearing that he has the ability drive his car, which demonstrates his ability to travel without companion assistance.
>
> Listing 1.03 is not met because while the claimant had *reconstructive surgery or surgical arthrodesis of a major weight- bearing joint*, as indicated above he maintains the ability to ambulate effectively. In this instance, while the claimant has had several reconstructive surgeries on his feet, the record reflects that he has the ability to stand and walk for extended periods of time. For instance, the claimant has held several jobs as a server and a waiter, which require him to stand and walk for hours in a day. The record reflects, the claimant maintained positions, at Subway, McDonald's, as a front desk person at a hotel, and as a caregiver. (Ex. 12E/13E) Therefore, the undersigned finds that the volume of standing, walking, and moving around, associated with the above listed jobs shows that the claimant is capable of ambulating effectively.

(AR 20) (emphasis in original).

In reviewing the medical evidence, the ALJ noted that in June 2010, plaintiff saw a podiatrist, Dr. Henry Bryant, complaining of pain on the plantar aspect of both feet as well as ankle, calf and knee pain (AR 22). Dr. Bryant noted that plaintiff was not on any prescription pain medication and recommended custom molded shoes and inserts to offload pressure from the plantar aspect of both feet (AR 22).

The consultative examiners offered differing opinions. On March 9, 2011, John Nicholson, M.D., examined plaintiff (AR 259-69). While plaintiff reported arthralgias/joint pain, he also reported that he had no muscle aches or joint swelling (AR 260). The doctor noted that plaintiff's gait was slightly widened with a heel to toe transfer pattern, and that plaintiff had mechanical back pain without overt loss of motion (AR 260). The doctor completed a range of motion chart, noting abnormal tandem walk, heel/toe walk and squat, with a gait and joint abnormalities (AR 263-64). Dr. Nicholson opined that plaintiff was unlikely to be able to tolerate standing or walking for more than two hours per day (AR 260). The ALJ gave Dr. Nicholson's opinion great weight

> as his findings are supported by exam results confirming that - while the claimant has obvious physical functioning limits that impact his ability to stand and walk - he is still fully capable of doing sedentary work. In particular, Dr. Nicholson's opinion is based on objective evidenced illustrating that the claimant has no significant range of motion restrictions or functionally limiting pain in his back, no muscle aches or joint swelling, and no established medical evidence indicating the claimant is unable to sit for prolonged periods of time.

(AR 22).

Plaintiff also had an examination performed by Nicole Edwards, D.O., on July 30, 2011 (AR 22-23). Dr. Edwards noted that plaintiff's right foot was 1/2 inch longer than his right

foot, that he limps towards his left side, that he walks on the lateral side of his right foot, that he walks on the ball of his left foot, that his heel never touches the ground on the left side, and that "[h]is left leg is significantly shorter than his right leg" (AR 289). Dr. Edwards noted that plaintiff had atrophy with his calf muscles being very tiny (especially on the left) and "very small shins bilaterally" (AR 289). Plaintiff was not able to walk on his heels or do heel-to-toe walk, but he could walk on his toes and "squat minimally" (AR 289). The doctor concluded that

> Despite the fact that [plaintiff] has had multiple surgeries, his feet are still very misshapen and he has limited range of motion. His ambulation is very abnormal. He has leg-length discrepancy and it is clear to see where this can cause lots of pain and limits his functionality severely.

(AR 289). The doctor also noted that plaintiff had arthritis "from the defects and his limited range of motion [sic] and I do believe that this is severely functionally limiting as well." Despite these limitations, plaintiff advised Dr. Edwards that he can dress and feed himself, stand for approximately one hour at a time, stand for one hour in an eight-hour day, sit up to seven hours, walk two blocks on flat ground, lift 20 pounds, do household chores, climb stairs and do some yard work (AR 288). Contrary to plaintiff's hearing testimony that he has license and drives (AR 71-72), plaintiff told Dr. Edwards that he could not drive a car (AR 288).

    The ALJ gave limited weight to Dr. Edward's opinion, noting in part: that it does not specifically detail the nature of how the range of motion limits preclude specific sedentary physical functional limits; and, that it is reasonable to conclude that plaintiff should have some pain and/or limitations because of his physical impairment, but the evidence does not substantiate Dr. Edward's opinion of such severe functional limitations that would preclude him from the performance of all work-related activity as is required under Social Security rules and regulations (AR 23). The ALJ felt that this conclusion was also supported by plaintiff's "ability in the past to

partially perform physical work at a higher exertional level as well as his ability to perform a considerable amount of activities of daily living consistent with the above residual functional capacity" (AR 23).

"It is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians." *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). *See Craft v. Commissioner of Social Security*, 39 Fed. Appx. 274, 276 (6th Cir. 2002) ("[i]t is the Commissioner's function to resolve conflicts in the medical evidence"). Non-treating physicians or psychologists who examine a claimant only once are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir. 2010). While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). Here, the ALJ was faced with two examining consultants who had divergent opinions. Ultimately, the ALJ gave more weight to the opinions of Dr. Nicholson, because they were more complete and consistent with plaintiff's daily activities.

Substantial evidence supports the ALJ's determination that plaintiff can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a) ("[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). This is consistent with the opinions of Dr. Nicholson, Dr. Bryant and plaintiff's daily activities. Accordingly, plaintiff's claim of error should be denied.

### B. The ALJ erred because plaintiff is mentally unstable due to his physical condition.

Plaintiff contends that the ALJ erred by failing to find him disabled due to mental instability. Plaintiff's contention is not cognizable in this appeal, because he did not raise the issue of alleged mental instability in the administrative proceedings. Plaintiff did not list a mental impairment on his application (AR 194) and no mental issues were addressed by plaintiff or his counsel at the administrative hearing. On the contrary, the only impairments considered at the hearing were plaintiff's club feet and osteoarthritis, with plaintiff's counsel advising the ALJ that while plaintiff suffered from symptoms (pain) he had "no other diagnosed medical condition" (AR 41).[5] "It is axiomatic that a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal." *Maloney v. Commissioner of Social Security*, 480 Fed. Appx. 804, 810 (6th Cir. 2012) (internal quotation marks omitted). Thus, "[t]his Court will not review the ALJ's decision with respect to issues not properly raised at the administrative level." *Maple v. Apfel*, 14 Fed. Appx. 525, 537 (6th Cir. 2001). Accordingly, this issue is not cognizable on review.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: June 18, 2015  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

---

[5] The Court notes that counsel's statement made at the hearing is consistent with counsel's pre-hearing brief (AR 239-40).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).